UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GATSBY FRIMPONG,

                   Plaintiff,

        v.

EVERYREALM INC., REPUBLIC COMPOUD
LLC, d/b/a REPUBLIC REAL ESTATE, REPUBLIC
OPERATIONS LLC, d/b/a REPUBLIC, OPENDEAL
INC., d/b/a REPUBLIC, OPENDEAL PORTAL LLC,
d/b/a REPUBLIC, JESSE YORIO, in his individual
and professional capacities, and JANINE YORIO, in
her individual and professional capacities,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 22-cv-10487 (GHW)(RWL)

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u><br><u>DEFENDANTS EVERYREALM INC. (f/k/a REPUBLIC REALM INC.),</u><br><u>JANINE YORIO, AND JESSE YORIO'S</u><br><u>MOTION TO COMPEL ARBITRATION</u>

PROSKAUER ROSE LLP

Lloyd B. Chinn, Esq.
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900 (Fax)
lchinn@proskauer.com
*Attorneys for Everyrealm Inc.*
*(f/k/a Republic Realm Inc.),*
*Janine Yorio and Jesse Yorio*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT.......................................................................................... 1

RELEVANT FACTS ......................................................................................................... 4

    A.    The Parties................................................................................................... 4

    B.    Terms of Plaintiff's Agreement to Arbitrate ..................................................... 7

    C.    Frimpong's Filing of the Instant Action Contrary to the Agreement ................................. 8

ARGUMENT ................................................................................................................... 9

I.    THIS ACTION SHOULD BE DISMISSED AND PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS. ..................................................................... 9

    A.    The EFA Does Not Apply. .............................................................................. 9

    B.    This Dispute Is Governed by the Federal Arbitration Act................................. 13

    C.    The FAA Requires Arbitration of the Claims Asserted in Plaintiff's Complaint. ........... 15

        1.    Frimpong Entered Into a Valid and Enforceable Agreement to Arbitrate............. 17

        2.    Frimpong's Agreement to Arbitrate Encompasses the Claims in the Complaint, Which Are Arbitrable............................................................................. 19

        3.    All of Plaintiff's Claims Should Be Compelled to Arbitration............................ 20

CONCLUSION............................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Ahing v. Lehman Bros.*,
No. 94 Civ 9027, 2000 WL 460443 (S.D.N.Y. Apr. 18, 2000) .......................................20

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ..................................................................................................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..................................................................................................16

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003) .......................................................................................12

*Broich v. Inc. Vill. of Southampton*,
462 F. App'x 39 (2d Cir. 2012) ...................................................................................13

*Byer v. Periodontal Health Specialists of Rochester, PLLC*,
No. 20-1751-cv, 2021 WL 3276725 (2d Cir. Aug. 2, 2021) ...........................................10

*Chardon v. Fernandez*,
454 U.S. 6 (1981) ................................................................................................10, 11

*Charter Communs., Inc. v. Garfin*,
No. 20 Civ 7049, 2021 WL 694549 (S.D.N.Y. Feb. 23, 2021) .......................................15

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .........................................................................................14, 17, 20

*Daly v. Citigroup, Inc.*,
939 F.3d 415 (2d Cir. 2019) .......................................................................................20

*DeBono v. Wash. Mut. Bank*,
No. 05 Civ 10333, 2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006) ....................................18

*Desiderio v. NASD*,
191 F.3d 198 (2d Cir. 1999) .......................................................................................20

*Dubois v. Macy's E. Inc.*,
No. 06 CV 6522, 2007 WL 3193169 (E.D.N.Y. July 13, 2007),
*aff'd*, 338 F. App'x 32 (2d Cir. 2009) .........................................................................14

*Endresen v. Banc of Cal., Inc.*,
2018 WL 11399501 (C.D. Cal. Sept. 20, 2018) ............................................................21

ii

*Feroce v. Bloomingdale's Inc.*,
   No. 12-CV-5014, 2014 WL 294199 (E.D.N.Y. Jan. 23, 2014) .......................................18

*Fletcher v. Kidder, Peabody & Co.*,
   81 N.Y.2d 623 (1993) .......................................................................................................14

*Genesco Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987) .............................................................................................17

*Gilbert v. Indeed, Inc.*,
   513 F. Supp. 3d 374 (S.D.N.Y. 2021) ..............................................................................15

*Gilbert v. N. Am. Airlines*,
   No. 12-cv-523 (KAM)(JMA), 2014 WL 1271057 (E.D.N.Y. Mar. 26, 2014) ..................9

*Gold v. Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004) .................................................................................16, 18, 20

*Graphic Scanning Corp. v. Yampol*,
   850 F.2d 131 (2d Cir. 1988) .............................................................................................14

*Green v. Brennan*,
   578 U.S. 547 (2016) ....................................................................................................10, 11

*Guyden v. Aetna, Inc.*,
   544 F.3d 376 (2d Cir. 2008) .............................................................................................17

*Kim v. Reins Int'l Cal., Inc.*,
   9 Cal. 5th 73 (Cal. 2020) ..................................................................................................21

*Kuchinsky v. Curry*,
   No. 09 Civ. 00299 (DLC), 2009 WL 1492225 (S.D.N.Y. May 28, 2009) .......................19

*Latif v. Morgan-Stanley & Co.*,
   No. 18cv11528, 2019 WL 2610985 (S.D.N.Y. June 26, 2019) ........................................15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ..............................................................................................14, 15, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ....................................................................................................15, 16, 20

*Newton v. LVMH Moet Hennessey Louis Vuitton*,
   192 A.D.3d 540 (1st Dep't 2021) ......................................................................................15

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) .............................................................................................16

iii

*Nunez v. Citibank, N.A.*,
  No. 08 Civ. 5398, 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009) ........................................14, 17, 18, 20

*Oldroyd v. Elmira Sav. Bank*,
  134 F.3d 72 (2d Cir. 1998)........................................................................................................17

*Owoyemi v. JP Morgan Chase & Co.*,
  No. 10-CV-6001, 2011 WL 13298364 (E.D.N.Y. May 5, 2011) (Section 1981)............................20

*Philippe v. Red Lobster Rests. LLC*,
  No. 15-CV-2080, 2015 WL 4617247 (S.D.N.Y. Aug. 3, 2015) ....................................................12

*Poppe v. Sprouts Farmers Mkt., Inc.*,
  2021 Cal. Super. LEXIS 31139 (Sac. Cty. Sup. Ct. May 25, 2021) ................................................21

*Porcelli v. JetSmarter, Inc.*,
  No. 19 Civ. 2537 (PAE), 2019 WL 2371896 (S.D.N.Y. June 5, 2019)..........................................19

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ..................................................................................................................14

*Reynolds v. de Silva*,
  No. 09 Civ. 9218, 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010) ...................................................20

*Rice v. Brown Bros. Harriman & Co.*,
  No. 96 Civ. 6326, 1997 WL 129396 (S.D.N.Y. Mar. 21, 1997)...................................................20

*Ricketts v. Nat'l Debt Relief, LLC*,
  No. 21056/19, 2019 WL 13095644 (N.Y. Sup. Oct. 4, 2019) .......................................................15

*Roby v. Corp. of Lloyd's*,
  996 F.2d 1353 (2d Cir. 1993)....................................................................................................17

*Rodriguez v. Four Seasons Hotels, Ltd.*,
  No. 09 Civ. 2864 (DLC), 2009 WL 2001328 (S.D.N.Y. July 10, 2009) .........................................20

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012)......................................................................................................16

*Tarulli v. Circuit City Stores, Inc.*,
  333 F. Supp. 2d 151 (S.D.N.Y. 2004)........................................................................................18

*Whidbee v. Garzarelli Food Specialties, Inc.*,
  223 F.3d 62 (2d Cir. 2000).........................................................................................................10

*White v. WeWork Cos.*,
  No. 20-cv-1800 (CM), 2020 WL 3099969 (S.D.N.Y. June 11, 2020)............................................15

iv

*Xiaohong Xie v. The JP Morgan Chase Short-Term Disability Plan*,
No. 15-cv-04546, 2017 WL 2462675 (S.D.N.Y. June 7, 2017) ........................................14

**STATUTES**

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 1981 ..................................................... passim

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act,
Pub. L. No.117-90, 136 Stat. 26 (codified at 9 U.S.C. §§ 401, 402) ........................ passim

Equal Pay Act, 29 U.S.C. § 206(d) ......................................................................................20

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* .................................................................. passim

Fed. R. Civ. Proc. 11 .................................................................................................2, 10, 11

Fed. R. Civ. Proc. 12 ...........................................................................................................2

N.Y.C. Human Rights Law, N.Y.C. Admin. Code § 8-107....................................................20

N.Y. Equal Pay Law, N.Y. LAB. LAW § 194....................................................................9

N.Y. LAB. LAW § 1 *et seq.* .............................................................................................9, 20

N.Y. State Human Rights Law, N.Y. EXEC. LAW § 296........................................................20

Private Attorneys General Act, CAL. LAB. CODE §§ 2698, 2699............................................21

## PRELIMINARY STATEMENT

This is an action in which the Plaintiff Gatsby Frimpong (a/k/a "Derek Daniel Gatsby Frimpong", and apparently other variations thereof) has threatened Everyrealm Inc. ("Everyrealm") with patently frivolous claims, all of which are subject to mandatory arbitration. Indeed, Frimpong never complained to anyone regarding the allegations he asserts in this lawsuit. Notwithstanding the fanciful assertions contrived by Frimpong and his counsel for purposes of this litigation, on March 3, 2022, Frimpong sent an unsolicited Slack message to Everyrealm board member Julia Schwartz wherein he thanked her for "building such a great company." In response to Frimpong's attempt to "shake down" Everyrealm for an unwarranted settlement pre-filing, Everyrealm itself commenced arbitration – as it was contractually entitled to do – to vindicate itself and clear its name.  Months later – and apparently only after deciding to take the step of contradicting a prior sworn statement – Frimpong and his counsel filed the instant suit.

Through his letter briefs and a lengthy court conference, Frimpong has mustered only one argument for remaining in court – that he can somehow rely on the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("the EFA") solely because Frimpong remained employed by Everyrealm through March 4, the day after the EFA's effective date.  But this claim is directly contradicted by the language of the EFA itself, a Supreme Court case defining a key term contained therein and a central fact admission.  The EFA applies only to claims of sexual harassment that arose or accrued on or after March 3, 2022.  The only theory for EFA coverage advanced by Frimpong and his counsel (whether in the Complaint, in letters to the Court or during the January 24 conference) is that Frimpong was constructively discharged on or after the EFA's effective date.  (See docs. 12 at p. 2 & 22 at p. 1).   But as a matter of recent Supreme Court precedent, a constructive discharge claim accrues on the date a notice of resignation is given.  And here, it is conceded that Frimpong provided his notice

of resignation to Everyrealm on March 1, 2022, two days before the EFA's effective date.

This case – much like two others filed by Frimpong's counsel – belongs in arbitration.  It – like the others – has been filed publicly with the intent to cause reputational harm and extract unwarranted settlements from Everyrealm.[1]

Defendants, Everyrealm (f/k/a "Republic Realm Inc."), Janine Yorio, and Jesse Yorio (collectively "the Everyrealm Defendants") respectfully move this Court for an Order pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. §§ 3, 4: (i) dismissing the action against the Everyrealm Defendants because all claims contained in the Complaint are subject to arbitration under a valid arbitration agreement; and (ii) compelling plaintiff Frimpong to arbitrate the claims asserted in his Complaint against the Everyrealm Defendants pursuant to the arbitration provision contained within his Worksite Employee Acknowledgement.

Following his brief four-month tenure with Everyrealm, Frimpong filed the instant action contrary to an express contract, in which he agreed to arbitrate all disputes with Everyrealm. Indeed, it appears that this action was filed merely as a "money grab" in an effort to garner publicity – and to try to harm Everyrealm, especially in its relations with its investors – while fully cognizant that the public lawsuit would ultimately be dismissed in favor of arbitration.

On December 19, 2021, Frimpong entered into an arbitration agreement (the "Agreement"), in which he agreed to "use binding arbitration as the sole and exclusive means to resolve all disputes that may arise between you and [Republic Realm Inc.] . . . including, but not limited to, disputes regarding termination of employment and compensation . . . Included within the scope of this arbitration agreement are all disputes, whether based on tort, contract, [or] statute []including, but not limited to . .

---

[1] As the Court is aware from Mr. Frimpong's own court filing (See doc. 12) and discussion during the January 24 court conference, Everyrealm has already served Frimpong with a Rule 11 safe harbor letter and intends to submit a motion for sanctions addressing the conduct of Plaintiff and his counsel in more detail.

. any other similar state or local law or regulation, or claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964 . . . ."  (See Declaration of William Kerr ("Kerr Decl.") at Exh. B, at pp. 2–3).[2]  As Frimpong's counsel has been long aware, Everyrealm Inc. was formerly known as Republic Realm Inc. and is thus a party to this Agreement with Mr. Frimpong.

Contrary to his contractual obligations under the Agreement, Frimpong filed a Complaint against the Everyrealm Defendants in this Court, including false inflammatory and salacious allegations and content, and purporting to assert claims relating to his employment, including claims of race and national origin discrimination and retaliation. [*See* doc. 1].  Seeking to evade mandatory arbitration, and despite having voluntarily participated in an arbitration proceeding initiated by the Everyrealm Defendants before the AAA, Frimpong fraudulently invoked the EFA by maintaining that a purported sexual harassment dispute "accrued" on March 4, 2022. (See docs. 1 at ¶ 24 and 22 at n. 1).

However, there can be no question that the EFA has no application here. Indeed, neither Frimpong nor his Counsel dispute that plaintiff gave notice of his resignation to Mrs. Yorio on March 1, 2022 – two days prior to the non-retroactive legislation's effective date.

Because the claims asserted by plaintiff fall outside EFA's prospective coverage, and are expressly within the scope of the Agreement's broad arbitration provision, plaintiff's claims must be addressed in arbitration pursuant to the Agreement.  (Kerr Decl., Exh. B at p. 2).

---

[2] Frimpong also entered into an employment agreement at the time of his hire in which he expressly agreed to arbitrate "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this [Employment] Agreement . . . ." (See doc. 8-2 at p. 6).

3

## RELEVANT FACTS

### A.    The Parties

Plaintiff's claims arise out of his employment with Everyrealm.  Everyrealm was formerly known as Republic Realm Inc. and was renamed by certificate of name change filed with the State of Delaware on February 3, 2022. (Kerr Decl., Exh. A at p. 2).  This fact is both indisputable and well-known to Frimpong's counsel.  (See doc. 12 in *Yost v. Everyrealm et al.*, Case No. 1:22-cv-06549(PAE)(SLC) & doc. 11 in *Johnson v. Everyrealm et al.*, Case No. 1:22-cv-06669(PAE)(GWG)). Everyrealm is an active investor in and developer of immersive media, focusing on content, infrastructure and gaming.  It is a Delaware corporation with its principal place of business in New York, New York. (*Id.* at ¶ 4).  Everyrealm has additional operations in Connecticut and in Croatia. (*Id.* at ¶5).

Janine Yorio is the founder and CEO of Everyrealm and is a resident of the State of New York. (See Declaration of Janine Yorio ("Mrs. Yorio Decl.") at ¶ 1). Jesse Yorio is the Co-Head of Product of Everyrealm and is a resident of the State of New York.  (See Declaration of Jesse Yorio ("Mr. Yorio Decl.") at ¶ 1). Janine and Jesse Yorio are – and have been for many years – married.  (See Mrs. Yorio Decl. at ¶ 2).

Everyrealm employed Frimpong as a Director of Product for approximately four months, from November 1, 2021 through March 4, 2022 – when he voluntarily resigned for personal reasons. (Mrs. Yorio Decl. at ¶ 3). Notably, Frimpong provided notice of his resignation on March 1, 2022. (See doc. 12-1 at p. 4). Frimpong never visited Everyrealm's office in New York City, nor did he ever meet a single Everyrealm employee, including Mrs. Yorio, in person. (See doc. 1 at ¶ 54). Indeed, his hire followed exclusively virtual interviews, including two with Mrs. Yorio. (Mrs. Yorio Decl. at ¶ 3–4).

In his role as a Director of Product, Frimpong, a purported technical product manager, was primarily responsible for product management of Everyrealm's metaverse database ("the Lobby"). (Mrs. Yorio Decl. at ¶ 7). Serious concerns began to emerge regarding Frimpong's performance in late-February 2022. While working on the Lobby, Frimpong received multiple reviews from trained software engineers stating that the technology Frimpong chose to implement on the project was inadequate for the long-term scale and scope of the project, causing Everyrealm to question his experience. (See Mrs. Yorio Decl. at ¶ 8). The Company's concern with his pace of work and choice of technology prompted Everyrealm to add another product manager to the Lobby to improve lines of communication. Indeed, during this project, Frimpong missed multiple milestones and regularly failed to timely forecast that such milestones would be missed.  (See Mrs. Yorio Decl. at ¶¶ 9–10).

Everyrealm, at the direction of then-human resources director Katherine "Kathy" Yost, performed a mid-employment background check on Frimpong (as it did with all of the Company's employees) in February 2022. (Mrs. Yorio Decl. at Exh. A). Frimpong, like others, was fully aware of the review at the time it occurred. (Id.). The background check did not specifically question his prior employment, and the results were never relied upon by Everyrealm for any purpose. (Id.).

During a scheduled March 1, 2022 meeting to discuss Everyrealm's expectation that Frimpong visit its New York City office as needed for meetings with the product team – appearing on both Frimpong's and Mrs. Yorio's electronic calendars – Frimpong gave notice to Mrs. Yorio of his intent to resign from Everyrealm. (Mrs. Yorio Decl. at ¶¶ 13–15, Exh. B).  During that meeting, he cited family reasons as the stimulus for his resignation – his father had recently passed away and had omitted Frimpong and his half-sibling from his will, thus Frimpong was devoting a significant amount of time fighting for an inheritance.  (Mrs. Yorio Decl. at ¶ 14).  Indeed, during that conversation, Frimpong expressed no displeasure whatsoever with his Everyrealm employment. (Mrs. Yorio Decl. at ¶ 16).

Mrs. Yorio and Frimpong never communicated with one another again, whether by email, Slack message, video or phone. (See Mrs. Yorio Decl. at ¶ 17). And to be clear, while this point has been made before (See doc. 20 at n. 4), Frimpong has never once asserted there were any communications whatsoever between himself and Mrs. Yorio after March 1, 2022.  Indeed, the documentary evidence reveals that there were no calls or written messages between Frimpong and Mrs. Yorio following that date. A review of Mrs. Yorio's phone records reveals that there were no phone calls between them. (*See* Mrs. Yorio Decl. at Exh. C); nor were there any emails, slack messages, or Google Hangouts between them following that date. (See Mrs. Yorio Decl. at Exh. D).[3]

On March 1, 2022, following his meeting with Mrs. Yorio, Frimpong sent a slack message to an Everyrealm contractor[4], stating, "ok, so I have finally quit...so they know now. I will start creating some transition docs for them tomorrow to make the move smooth." (See Mrs. Yorio Decl. at Exh. E).

Given the events of March 1 – and the fact that nothing of any legal consequence even arguably occurred thereafter – it is not then surprising that Frimpong stated in a sworn submission – made on penalty of perjury – that the "Latest" "DATE(S) DISCRIMINATION TOOK PLACE" was March 1, 2022. (See doc. 8-1).

On March 2, 2022, as is reflected in Frimpong's calendar entries, Yost – who is also represented by Frimpong's counsel in a suit against Everyrealm – performed Frimpong's offboarding. (See Mrs. Yorio Decl. at Exh. B)  As reported by Yost, Frimpong cited personal reasons as the cause of his

---

[3] Mrs. Yorio and Frimpong spoke via Google Hangouts a total of seven times during his employment, and never spoke via cell phone, text message, Whatsapp, Facetime, Telegram, Signal, Google Meet or Zoom. (*See* Mrs. Yorio Decl. at ¶ 19, Exh. D).

[4] In reviewing internal messages between Frimpong and this Everyrealm-paid contractor, Everyrealm has learned that Frimpong was relying on the contractor to assist him with his own personal application called "Gatsby.tv" and with whom Frimpong planned to "work[] on something similar to [Everyrealm]" following his resignation.

departure from the company. (See Mrs. Yorio Decl. at ¶ 14; Mr. Yorio Decl. at Exh. A). As Yost wrote to Mr. Yorio:

> [Frimpong] was very internally focused, on the personal issues that have gone on the past few years.[5] [W]hat I mean is he positioned this change as giving him the time and space to focus on the myriad of legal issues and personal hills he has to climb. [H]e wasn't over the top praising anything, just I'm finding I can't commit to the level I'm needed[.]

(Id.). On March 3, 2022, Frimpong wrote to Ms. Schwartz that Everyrealm was a "great company." (*See* Declaration of Julia Schwartz ("Schwartz Decl.") at Exh. A). Frimpong's last date of employment with Everyrealm was March 4, 2022. (Mrs. Yorio Decl. at Exh. B).

At no point prior to Seppinni's July 11, 2022 Demand Letter did Frimpong complain to any employee of Everyrealm that he suffered from purported sexual harassment or any other alleged misconduct. Unsurprisingly, plaintiff's counsel initially ignored, and ultimately refused, Everyrealm's third-party investigator's request to interview plaintiff regarding his claims of discrimination, harassment, and retaliation.

### B.   Terms of Plaintiff's Agreement to Arbitrate

On or about December 19, 2021, after Everyrealm had entered into an agreement with a service provider "Justworks" for certain human resources-related services, Frimpong electronically executed an agreement with Everyrealm and Justworks setting forth certain terms and conditions related to his employment. (*See* Kerr Decl., Exh. B). Paragraph 10 of the Agreement contains a broad arbitration provision that sets forth plaintiff's commitment to arbitrate all disputes arising from his employment, including those claims specifically alleged in his Complaint. It states, in relevant part:

> 10. **Arbitration** . By clicking "I Accept" below, you, on the one hand, and [Everyrealm] and Justworks, on the other hand, agree to use binding arbitration as the sole and exclusive means to resolve all disputes that

---

[5] The "personal issues" had nothing to do with his employment with Everyrealm (where he had only worked for a few months, not "years."). Indeed, Frimpong's Complaint describes his "personal issues" – "Mr. Frimpong became the sole caretaker of his younger sibling after their dad tragically died." (See doc. 1 at ¶ 53).

may arise between you and [Everyrealm] and/or you and Justworks, including, but not limited to, disputes regarding termination of employment and compensation. You specifically waive and relinquish your right to bring a claim against [Everyrealm] and/or Justworks, in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent you in a lawsuit against Worksite Employer or Justworks in a court of law.  . . . You, [Everyrealm], and Justworks agree that any claim, dispute, and/or controversy that you may have against [Everyrealm] (or its owners, directors, officers, managers, employees, or agents), or Justworks (or its owners, directors, officers, managers, employees, or agents), or that [Everyrealm] or Justworks may have against you, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("**FAA**"). Included within the scope of this arbitration agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims brought under the Fair Labor Standards Act or any other similar state or local law or regulation, or claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act or any other similar local, state, or federal law or regulation), equitable law, or otherwise.

(Kerr Decl., Exh. B at p. 2) (emphasis in original).

### C.    Frimpong's Filing of the Instant Action Contrary to the Agreement

Frimpong filed the instant lawsuit primarily to garner publicity, as it was filed with full knowledge that he was subject to a binding arbitration agreement and that all of his claims would be dismissed on that basis. By letter dated July 22, 2022, Everyrealm's counsel advised plaintiff's counsel that Frimpong was bound to use final and binding arbitration as the exclusive forum to resolve disputes arising out of his employment. (See doc. 10-1 in *Johnson v. Everyrealm et al.*, Case No. 1:22-cv-06669-PAE).[6]  For roughly a month, Frimpong even voluntarily participated in an arbitration initiated by the Everyrealm Defendants – and only raised the EFA as a bar to arbitration on December 8, 2022 at

---

[6] While the July 22, 2022 correspondence referred to the earlier arbitration provision contained in Frimpong's Employment Letter Agreement, the conclusion is nonetheless the same.

the initial case management conference with the arbitrator.[7]  Plaintiff thereafter filed a Complaint in

this Court on December 12, 2022, asserting claims of race discrimination, retaliation, and sexual

harassment in violation of Title VII, 42 U.S.C. § 1981, New York Labor Law ("NYLL"), the New

York Equal Pay Law, and a common law claim for Intentional Infliction of Emotional Distress

("IIED").  [*See* doc 1].  Plaintiff filed the Complaint in this action notwithstanding the Agreement,

which unmistakably requires him to resolve any dispute arisingfrom his employment relationship

through arbitration. (Kerr Decl., Exh. B at p. 2).

Notwithstanding the July 22 correspondence from Everyrealm's counsel, Frimpong's counsel

also filed two other actions in this Court before filing this one (*Katherine Yost v. Everyrealm Inc.*, et

al., Case No. 1:22-cv-06549; *Teyo Johnson v. Everyrealm Inc. et al.*, Case No. 1:22-cv-06669).

## ARGUMENT

**I.   THIS ACTION SHOULD BE DISMISSED, AND PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS.**

### A.   The EFA Does Not Apply.

Without question, Frimpong may not avail himself of the EFA.  Indeed, based on his own

admissions and descriptions of his claims, any purported "sexual harassment dispute" accrued on

March 1, 2022 – two days prior to the legislation's effective date.  The text of the legislation

unambiguously provides: "This Act, and the amendments made by this Act, shall apply with respect to

any dispute or claim that arises or accrues on or after the date of enactment of this Act." 8 Pub. L.

---

[7] Frimpong never asserted before the AAA that the arbitration provision in his Employment Letter Agreement was somehow an invalid basis to arbitrate his disputes with the Everyrealm Defendants.

[8] While Frimpong does not make any argument regarding the "arises" language, to the extent employment discrimination claims "arise" on a different date than they "accrue," the date that they arise would be prior to their accrual date. *See Gilbert v. N. Am. Airlines*, No. 12-cv-523 (KAM)(JMA), 2014 WL 1271057, at *6 (E.D.N.Y. Mar. 26, 2014) (citations omitted) ("Specifically, in employment discrimination cases, a claim is deemed to arise 'on the date an employee learns of an employer's discriminatory conduct. Under federal law, the claim accrues when the plaintiff knows or has reason to know of an injury that is a basis of an action.'"). Thus, to the extent Frimpong raises such an argument, the Court should reach the same decision – his claims predate the EFA.

No.117-90, 136 Stat. 26.  President Biden signed the legislation on March 3, 2022.  Frimpong's admissions and the uncontroverted documentary evidence leave no doubt – the EFA does not apply.

The last act of purported discrimination in Frimpong's Complaint is an asserted "constructive discharge." (See doc. 1 at ¶ 89). A "[c]onstructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000). Frimpong has relied exclusively upon this alleged constructive discharge as the only basis upon which he can come within the EFA's effective period.  (See docs. 12 & 22). However, in *Green v. Brennan*, the Supreme Court unequivocally held that a constructive discharge claim accrues when the plaintiff gives notice of his resignation.[9] 578 U.S. 547, 564 (2016) ("[A] constructive-discharge claim accrues . . . when the employee gives notice of his resignation, not on the effective date of that resignation.") ; *see also Byer v. Periodontal Health Specialists of Rochester, PLLC*, No. 20-1751-cv, 2021 WL 3276725, at *1 (2d Cir. Aug. 2, 2021) ("Under Title VII, Byer had 300 days from the date on which she gave notice of her resignation to file a charge of discrimination . . . but she failed to do so, rendering her clams untimely.") (citing *Green*, 578 U.S. at 546).  Indeed, *Green* and its progeny are themselves based on the well-established doctrine dating all the way back to *Chardon v. Fernandez*, 454 U.S. 6 (1981) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250 (1980)), in which the Supreme Court made it clear that a discriminatory termination of employment claim "accrues" at the point of the notice of termination, and not the termination's effective date.

---

[9] Frimpong has been on notice of the Everyrealm Defendants' position as to this case and its meaning since January 2, 2023, when they served him with their Rule 11 safe harbor notice.  He has nonetheless offered no basis for disregarding *Green* either in his letters to the Court or during the January 24, 2023 conference.

It is presumably thus no coincidence that the drafters of the EFA used the word "accrue" – the very term defined by the Supreme Court in *Ricks*, *Chardon*, and *Green* – to define the applicability of the EFA.[10]  Based on the unequivocal definition applied to the term "accrue" by the Supreme Court over the last forty years, Frimpong's admissions and the contemporaneous written communications make plain that Frimpong's purported sexual harassment claim, and any claims allegedly related thereto, pre-date the EFA.

First, neither Frimpong nor his Counsel dispute that plaintiff gave notice of his resignation on March 1, 2022.  In fact, his Counsel conceded as much when he failed to dispute the issue in his Oppositions to Everyrealm and Republic Operations' Requests for Pre-Hearing Conference (See docs. 12 & 22). What's more, Frimpong's counsel admitted that Frimpong gave notice on March 1 during this Court's January 24 telephone conference – "Mr. Frimpong resigned on the 1st [of March]." (See Transcript Excerpts, attached as Exh. A).[11]  And at no time in his sworn Charge of Discrimination filed with the Equal Employment Opportunity Commission, Complaint, letters to this Court, or telephone conference with this Court has Frimpong or his Counsel ever asserted that he experienced any form of discrimination whatsoever – much less sexual harassment – on or after March 3, 2022.  Alone, these cogent facts establish Frimpong's purported constructive discharge claim accrued on March 1, 2022 – prior to the EFA's effective date.

Second, indisputable electronic records, which this Court should consider when evaluating a Motion to Compel Arbitration, establish Frimpong's constructive discharge claim accrued when he gave notice of his resignation on March 1, 2022. Indeed, courts in the Second Circuit rely on a

---

[10] Frimpong does not assert that any purported sexual harassment dispute "arose" at another time. As Frimpong's counsel wrote to the Court, "this dispute **accrued** on March 4, 2022." (See doc. 22 at n. 1) (emphasis added).

[11] During this Court's January 24, 2023 conference, Frimpong's counsel misrepresented the evidence he submitted in his January 6, 2023 filing by stating: "You can see in the evidence that the defendants submitted to me in their threatened Rule 11 sanction motion which I shared with the Court that there's a meeting scheduled with Janine Yorio for after the notice date." However, there is no such meeting on the calendar. (See doc. 12-1).

11

summary judgment-like standard to decide motions to compel arbitration. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability," thus requiring review of factual submissions by District Court as to whether claimants/defendants were "customers" as defined by the National Association of Securities Dealers rules.); *see also Philippe v. Red Lobster Rests. LLC*, No. 15-CV-2080, 2015 WL 4617247, at *2 (S.D.N.Y. Aug. 3, 2015) ("It is . . . proper (and in fact necessary) to consider extrinsic evidence when faced with a motion to compel arbitration . . . .") (internal quotation marks omitted). Here, numerous electronic records establish Frimpong informed Mrs. Yorio of his intent to resign on March 1, 2022. (See, e.g., Mrs. Yorio Decl. at Exhs. B & E).

Specifically, on March 1, 2022 Frimpong wrote to an Everyrealm contractor stating, "ok, so I have finally quit…so they know now. I will start creating some transition docs for them tomorrow to make the move smooth." (Mrs. Yorio Decl. at Exh. E). This message directly corresponds with the March 1, 2022 calendar entry appearing both on Mrs. Yorio and Frimpong's calendars, during which Frimpong gave his notice of resignation. (Id. at ¶¶ 13–15 & Exhs. B & E). Moreover, Yost performed Frimpong's offboarding on March 2, 2022, which is also reflected on Frimpong's calendar. (Id. at Exh. B). And, when Mr. Yorio inquired with Yost regarding the offboarding on March 3, she replied – "I was just chatting with Bill about it – [Frimpong] was very internally focused, on the personal issues that have gone on the past few years. what I mean is he positioned this change as giving him the time and space to focus on the myriad of legal issues and personal hills he has to climb. he wasn't over the top praising anything. just I'm finding I can't commit to the level I'm needed[.]" (Mr. Yorio Decl. at Exh. A). These records, which neither Frimpong nor his counsel can – or do – dispute, establish that Frimpong gave notice of his resignation on March 1, 2022. Thus Frimpong's purported constructive discharge claim accrued on March 1, 2022, and his claims do not fall within the EFA's protection.

Indeed, consistent with his admissions and the documentary evidence, Frimpong swore in his Charge of Discrimination that the final date he allegedly experienced discrimination was March 1, 2022. (See doc. 8-1). Frimpong's unequivocal admission establishes his claims accrued on that date, and therefore predate the EFA. *See also Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 43 (2d Cir. 2012) (explaining "EEOC charges are sworn affidavits"). Counsel for Frimpong now, much-belatedly, asks the Court to believe that this March 1, 2022 date was a "scrivener's error" – despite the fact this date comports with all of his admissions and the uncontroverted evidence above. (See doc. 1 at ¶¶ 17–18). In the almost four months that elapsed between Frimpong filing his Charge and his Complaint, not once did he or his counsel raise this absurd "scrivener's error" point – even when Counsel for the Everyrealm Defendants raised the March 1 date in open court to Judge Engelmayer on October 5, 2022. (See doc. 61 in *Yost v. Everyrealm et al.*, Case No. 22-cv-06549). And other than to assert belatedly that this error occurred, Frimpong has done nothing to explain how it occurred, much less why he waited so long to offer this explanation for it. And Frimpong has never pointed to any legal authority that would permit him to avoid a sworn admission on a critical issue on such a flimsy basis. The Court should accept the March 1 date as a binding admission that any purported sexual harassment dispute accrued, at the latest, on March 1, 2022.

In light of the foregoing, Frimpong's claims are not subject to the EFA, and the Court should compel this action to arbitration.

**B.**     **This Dispute Is Governed by the Federal Arbitration Act.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to all contracts involving interstate commerce. The term "involving interstate commerce" is construed broadly. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995). As the Supreme Court has held, "the control over interstate commerce . . . reaches not only the actual physical interstate shipment of goods but also

contracts relating to interstate commerce." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967) (citation omitted). Where an employer's business is national in scope, the FAA will govern disputes about arbitrability. *See, e.g.*, *Graphic ScanningCorp. v. Yampol*, 850 F.2d 131, 133 (2d Cir. 1988) (concluding that the FAA applies where employer operated in several states).

The Agreement at issue here undoubtedly comes within the scope of the FAA. The Agreement even provides as much – "You, [Everyrealm], and justworks agree that any claim, dispute, and/or controversy that you may have against [Everyrealm] (or its owners, directors, officers, managers, employees, or agents) . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ('**FAA**')." (See Kerr Decl. at Exh. B). Moreover, it cannot be disputed that Everyrealm's business – the sale and marketing of digital real estate and immersive media development services to a worldwide market – is national in scope and, thus, plainly involves interstate commerce. (Kerr Decl. at ¶¶ 3, 5).

In addition, it is well-settled that the FAA applies to employment agreements such as plaintiff's. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123-24 (2001) (holding that FAA governs arbitration clauses in employment contracts other than those for transportation workers); *Xiaohong Xie v. The JP Morgan Chase Short-Term Disability Plan*, No. 15-cv-04546, 2017 WL 2462675, at *5 (S.D.N.Y. June 7, 2017); *Nunez v. Citibank, N.A.*, No. 08 Civ. 5398, 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009); *Dubois v. Macy's E. Inc.*, No. 06 CV 6522, 2007 WL 3193169 (E.D.N.Y. July 13, 2007), *aff'd*, 338 F. App'x 32 (2d Cir. 2009); *see also Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 638 (1993) (holding that arbitration clause in an employment contract "is within the class of agreements that are governed by the FAA").

Further, in situations where the FAA applies, it is a basic principle that the FAA preempts state law on the subject of the enforceability of arbitration clauses. *See Mitsubishi Motors Corp. v. Soler*

14

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (holding courts should apply federal substantive law of arbitrability to any arbitration agreement within coverage of FAA); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (FAA creates a "body of federal substantive law of arbitrability").

Although New York State has recently sought to eliminate mandatory pre-dispute arbitration in the employment setting, New York courts have continued – as they must – to enforce the FAA. *See Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374 (S.D.N.Y. 2021) (compelling arbitration of federal, state and local discrimination claims via the FAA in spite of Section 7515 of the C.P.L.R.)*; Charter Communs., Inc. v. Garfin*, No. 20 Civ. 7049, 2021 WL 694549, at *15 (S.D.N.Y. Feb. 23, 2021) (granting petition to compel arbitration of discrimination, retaliation and sexual harassment claims via the FAA in spite of Section 7515 of the C.P.L.R.); *White v. WeWork Cos.*, No. 20-cv-1800 (CM), 2020 WL 3099969, at *7 (S.D.N.Y. June 11, 2020) (granting motion to compel arbitration of discrimination claims pursuant to the Federal Arbitration Act where agreement included New York choice of law rule and plaintiff claimed New York law precluded enforcement of agreement); *Latif v. Morgan-Stanley & Co.*, No. 18cv11528, 2019 WL 2610985, at *4 (S.D.N.Y. June 26, 2019) (enforcing arbitration agreement where plaintiff claimed New York law precluded enforcement of agreement); *Ricketts v. Nat'l Debt Relief, LLC*, No. 21056/19, 2019 WL 13095644, at *1 (N.Y. Sup. Oct. 4, 2019) (compelling arbitration of claims and finding the Federal Arbitration Act supersedes New York law prohibiting arbitration of discrimination claims).[12]

### C.    The FAA Requires Arbitration of the Claims Asserted in Plaintiff's Complaint.

A motion to compel arbitration is governed by Section 4 of the FAA, which provides that "[a]

---

[12] The sole case concluding otherwise was reversed on other grounds. *See Newton v. LVMH Moet Hennessey Louis Vuitton*, 192 A.D.3d 540 (1st Dep't 2021).

party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA, and the strong federal policy favoring arbitration that it embodies, requires courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp.*, 473 U.S. at 626; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (*quoting Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24) (discussing "liberal federal policy favoring arbitration" under FAA); *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 229 (2d Cir. 2016) ("This policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes.") (alteration omitted) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). Indeed, courts are obligated to "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC*, 563 U.S. at 339 (citations omitted).

When a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a court should compel arbitration of the dispute. *See* 9 U.S.C. § 4 (directing that the court "shall" order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."); *see also Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 150 (2d Cir. 2004) (upholding district court grant of motion to compel arbitration, and finding that "given the very strong federal policy favoring arbitration . . . [plaintiff's] Title VII claims were subject to a compulsory arbitration[.]")

Further, courts should construe arbitration clauses as broadly as possible, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

16

The exacting application and broad construction of arbitration agreements dictate that, "[i]f the allegations underlying the claims 'touch matters' covered by the parties' [arbitration] agreement[s], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). Thus, a broad arbitration clause creates a presumption of arbitrability which can only be overcome if it "may be said with positive assurance that the arbitration clause is not susceptible to [the] interpretation that [it] covers the asserted dispute." *Nunez*, 2009 WL 256107, at *3 (*citing Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)).

In deciding a motion to compel arbitration through the lens of the strong policy favoring arbitration, this Court must consider four factors: (i) whether the parties have agreed to arbitrate their disputes; (ii) whether the scope of that agreement encompasses the plaintiff's claims; (iii) if federal statutory claims are asserted, whether the legislature intended them to be non-arbitrable; and (iv) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *See Guyden v. Aetna, Inc.,* 544 F.3d 376, 382 (2d Cir. 2008) (citing *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998)). As set forth below, application of these factors clearly requires that Frimpong's Complaint be dismissed and that he be compelled to arbitration.

### 1. <u>Frimpong Entered Into a Valid and Enforceable Agreement to Arbitrate.</u>

The FAA provides that "a written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be *valid, irrevocable, and enforceable*, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added); *see also Circuit City Stores, Inc*, 532 U.S. at 111-12.

Plaintiff has unquestionably entered into such a valid, unconditional and enforceable written agreement to arbitrate the very same claims he purports to bring before this Court, as evidenced by the

following provision in his Agreement:

> 10. **Arbitration** . By clicking "I Accept" below, you, on the one hand, and [Everyrealm] and Justworks, on the other hand, agree to use binding arbitration as the sole and exclusive means to resolve all disputes that may between you and [Everyrealm] and/or you and Justworks, including, but not limited to, disputes regarding termination of employment and compensation. You specifically waive and relinquish your right to bring a claim against [Everyrealm] and/or Justworks, in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent you in a lawsuit against Worksite Employer or Justworks in a court of law.  . . . You, [Everyrealm], and Justworks agree that any claim, dispute, and/or controversy that you may have against [Everyrealm] (or its owners, directors, officers, managers, employees, or agents), or Justworks (or its owners, directors, officers, managers, employees, or agents), or that [Everyrealm] or Justworks may have against you, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("**FAA** "). Included within the scope of this arbitration agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims brought under the Fair Labor Standards Act or any other similar state or local law or regulation, or claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act or any other similar local, state, or federal law or regulation), equitable law, or otherwise.

(Kerr Decl., Exh. B at p. 2) (emphasis in original).

Moreover, the final paragraph of the Agreement, which appears only inches away from

plaintiff's electronic signature, provides "**BY PRESSING SUBMIT, I AGREE THAT I HAD**

**READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND BY ALL OF THE ABOVE**

**TERMS AND THE APPLICABLE TERMS OF THE ATTACHED EXHIBITS.**" (Kerr Decl.,

Exh. B at p. 3) (emphasis in original). No question exists under these circumstances that arbitration is

warranted. *See Gold*, 365 F.3d at 148; *Feroce v. Bloomingdale's Inc.*, No. 12-CV-5014, 2014 WL

294199, at *6 (E.D.N.Y. Jan. 23, 2014); *Nunez*, 2009 WL 256107, at *3; *DeBono v. Wash. Mut. Bank*,

No. 05 Civ. 10333, 2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006); *Tarulli v. Circuit City Stores, Inc.*, 333

F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling arbitration where "[t]he Plaintiff voluntarily signed

the [arbitration] Agreement and knowingly accepted employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration").

### 2.    Frimpong's Agreement to Arbitrate Encompasses the Claims in the Complaint, Which Are Arbitrable.

The claims in the Complaint are clearly within the scope of the Agreement's arbitration clause and the mandate of the FAA. Here, the arbitration clause in plaintiff's Agreement provides for "binding" arbitration of "all disputes that may arise between you and [Everyrealm] . . . [i]nclud[ing] " (Kerr Decl., Exh. B at p. 2). This is a "classically broad" arbitration clause that, by virtue of the phrase "all disputes" and "any claim, dispute, and/or controversy that you may have against [Everyrealm]" extends to statutory claims of discrimination and retaliation – which are also expressly included in the arbitration provision ("Included within the scope of this arbitration agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, . . . claims of discrimination, harassment, and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964, as amended . . . equitable law, or otherwise."). *See, e.g., Porcelli v. JetSmarter, Inc.*, No. 19 Civ. 2537 (PAE), 2019 WL 2371896, at *2 (S.D.N.Y. June 5, 2019) (compelling arbitration where agreement provided for arbitration of "[a]ny claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein . . . ."); *Kuchinsky v. Curry*, No. 09 Civ. 00299 (DLC), 2009 WL 1492225, at **6-7 (S.D.N.Y. May 28, 2009) (compelling arbitration where arbitration agreement provided "[a]ny controversy or claim arising out of or relating to the construction of or application of any terms, provisions, or conditions of this Agreement shall . . . be submitted to arbitration.").

Even assuming, however, that the arbitration provision was ambiguous in scope (which it is not), any doubt as to the arbitrability of a claim should be resolved in favor of arbitrability.

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (holding arbitration must be ordered "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute") (emphasis added).

In addition, there is nothing in the language or history of the federal or local statutes to indicate a congressional intent to foreclose arbitration of any claims asserted herein. *See Circuit City Stores, Inc.*, 532 U.S. at 123 ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discriminationprohibited by federal law[.]").  As discussed prior (*see* Section 1, *supra*), the EFA precludes enforcement of pre-dispute arbitration agreements **only** as to sexual harassment disputes that accrue on or after March 3, 2022. (PL 117-90, March 3, 2022, 136 Stat 26.) (emphasis added).  Moreover, courts routinely hold that statutory employment discrimination claims are arbitrable and may be compelled to arbitration.  *See, e.g.*, *Daly v. Citigroup, Inc.*, 939 F.3d 415, 422 (2d Cir. 2019) (Title VII and Equal Pay Act); *Gold*, 365 F.3d at 148 (Title VII); *Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999) (Title VII); *Owoyemi v. JP Morgan Chase & Co.*, No. 10-CV-6001, 2011 WL 13298364, at *5 (E.D.N.Y. May 5, 2011) (Section 1981); *Reynolds v. de Silva*, No. 09 Civ 9218, 2010 WL 743510, at *4 (S.D.N.Y. Feb. 24, 2010) (NYLL); *Rodriguez v. Four Seasons Hotels, Ltd.*, No. 09 Civ. 2864 (DLC), 2009 WL 2001328, at *3 (S.D.N.Y. July 10, 2009) (NYSHRL); *Nunez*, 2009 WL 256107 (Title VII);  *Ahing v. Lehman Bros.*, No. 94 Civ. 9027, 2000 WL 460443, at *4 (S.D.N.Y. Apr. 18, 2000) (NYCHRL); *Rice v. Brown Bros. Harriman & Co.*, No. 96 Civ. 6326, 1997 WL 129396, at *3 (S.D.N.Y. Mar. 21, 1997) (NYCHRL).

### 3.      All of Plaintiff's Claims Should Be Compelled to Arbitration.

Because all of plaintiff's claims fall within the scope of the arbitration provision contained in his Agreement this Court should dismiss all of his claims.  On September 1, 2022, the Everyrealm

Defendants initiated arbitration proceedings before the AAA both to adjudicate the claims plaintiff has asserted in the Complaint and to pursue breach of contract claims and sanctions against plaintiff. This Court should therefore dismiss this action and compel that these claims be heard before the AAA.

To the extent Frimpong asserted claims subject to the EFA – though he has not, he agreed to stay any non-arbitrable claims for the pendency of arbitration – "[Frimpong] and [Everyrealm] agree that litigation of any Exempt Claim should be stayed pending final resolution of all non-Exempt Claims in arbitration so that litigation of the Exempt Claim(s) does not disrupt the arbitration proceedings or render them ineffective; no party shall oppose the other party's request for a stay." (Kerr Decl., Exh. B at p. 2) (emphasis in original). Such provisions have been enforced in the context of other non-arbitrable claims. *See, e.g., Poppe v. Sprouts Farmers Mkt., Inc.*, 2021 Cal. Super. LEXIS 31139, at **9–10 (Sac. Cty. Sup. Ct. May 25, 2021) (severing non-arbitrable PAGA claim from arbitrable claims and staying litigation where, *inter alia*, "the parties agreed that any non-arbitrable claim may be severed and stayed.") Moreover, following the line of authority pertaining to Sarbanes-Oxley ("SOX") and California's Private Attorney General Act claims, any claims subject to the EFA should be stayed pending the outcome of the arbitration. *See, e.g., Endresen v. Banc of Cal., Inc.*, 2018 WL 11399501, at **5 (C.D. Cal. Sept. 20, 2018) (staying non-arbitrable SOX whistleblower claim while arbitration was pending, because non-arbitrable claims predominated the dispute and the outcome of non-arbitrable issues could be determined via arbitration); *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 82 (Cal. 2020) ("The court dismissed Kim's class claims and ordered arbitration of all remaining claims except the PAGA claim and the injunctive relief portion of the unfair competition claim. The PAGA litigation was stayed until arbitration was complete."). Here, when construing Frimpong's claims in the light most favorable to him, eight of his ten claims are unrelated whatsoever to purported sexual harassment or sexual harassment-based retaliation. In light of the foregoing, the Court should,

respectfully, stay any potential non-arbitrable claims while arbitration is pending.

## **CONCLUSION**

For the foregoing reasons, the Everyrealm Defendants are entitled to an Order dismissing the Complaint, compelling arbitration, staying any claims subject to the EFA – of which there are none, and for all other relief that the Court may deem just and proper.

Dated: New York, New York
          February 8, 2023


                                        PROSKAUER ROSE LLP


                              By:       /s/ Lloyd B. Chinn_____

                                        Lloyd B. Chinn, Esq.
                                        Eleven Times Square
                                        New York, New York 10036-8299
                                        Ph. (212) 969-3000
                                        Fax (212) 969-2900
                                        lchinn@proskauer.com
                                        *Attorney for Everyrealm Inc.*
                                        *(f/k/a Republic Realm Inc.),*
                                        *Janine Yorio and Jesse Yorio*