UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GATSBY FRIMPONG,

                  Plaintiff,

         v.

EVERYREALM INC., REPUBLIC COMPOUD
LLC, d/b/a REPUBLIC REAL ESTATE, REPUBLIC
OPERATIONS LLC, d/b/a REPUBLIC, OPENDEAL
INC., d/b/a REPUBLIC, OPENDEAL PORTAL LLC,
d/b/a REPUBLIC, JESSE YORIO, in his individual
and professional capacities, and JANINE YORIO, in
her individual and professional capacities,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 22-cv-10487 (GHW)(RWL)

## EVERYREALM INC., JANINE YORIO, AND JESSE YORIO'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AS TO, THE SEXUAL HARASSMENT AND PURPORTEDLY RELATED CLAIMS IN PLAINTIFF'S COMPLAINT

PROSKAUER ROSE LLP

Lloyd B. Chinn, Esq.
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900 (Fax)
lchinn@proskauer.com
*Attorneys for Everyrealm Inc.*
*(f/k/a Republic Realm Inc.),*
*Janine Yorio and Jesse Yorio*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

LEGAL STANDARD ............................................................................................................ 3

ARGUMENT ......................................................................................................................... 4

      I.     Frimpong Fails to State a Claim for Sexual Harassment ................................... 4

            a.     Frimpong Does Not Assert Any Harassment Was "Because of" a Discriminatory Motive. ....................................................................................6

            b.     Frimpong's Allegations Amount to Petty Slights, Trivial Inconveniences, and/or Isolated Incidents....................................................................................7

      II.    Frimpong Fails to State a Claim for Constructive Discharge. ........................ 11

      III.   Frimpong Does Not Allege He Engaged in Protected Activity ...................................... 13

      IV.   The Court Should Reject Frimpong's Contradictory and False Allegations. ................ 15

CONCLUSION ................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Alfano v. Costello,*
    294 F.3d 365 (2d Cir. 2002)....................................................................................6, 9

*Am. Centennial Ins. Co. v. Seguros La Republica, S.A.,*
    No. 91 Civ. 1235, 1996 WL 304436 (S.D.N.Y. June 5, 1996) ....................................15, 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................................3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................................3

*Burlington N. & Santa Fe Ry. Co. v. White,*
    548 U.S. 53 (2006) ..........................................................................................................8

*Catanzaro v. City of N.Y.,*
    Nos. 10 Civ. 1825 (JSR), 10 Civ. 1827 (JSR), 2011 WL 335648 (S.D.N.Y. Jan. 25,
    2011)................................................................................................................................5

*Clark Cnty. Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001) ........................................................................................................9

*Copantitla v. Fiskardo Estiatorio, Inc.,*
    788 F. Supp. 2d 253 (S.D.N.Y. 2011) .............................................................................12

*Croom v. W. Conn. State Univ.,*
    77 F. App'x 60 (2d Cir. 2003)..........................................................................................12

*Das v. Consol. Sch. Dist. Of New Britain,*
    369 F. App'x 186 (2d Cir. 2010)......................................................................................5

*Davis v. Goodwill Indus. of Greater N.Y. & N.J., Inc.,*
    No. 15 Civ. 7710 (ER), 2017 WL 1194686 (S.D.N.Y. Mar. 30, 2017) ............................12

*Dayes v. Pace Univ.,*
    No. 98 Civ. 3675 (WHP), 2000 WL 307382 (S.D.N.Y. Mar. 24, 2000),
    *aff'd,* 2 F. App'x 204 (2d Cir. 2001) ..............................................................................10

*DelleFave v. Access Temps., Inc.,*
    No. 99 CIV. 6098 RWS, 2001 WL 25745 (S.D.N.Y. Jan. 10, 2001) ............................6, 7

*Edel Gems, Inc. v. Cont'l Jewelers, Inc.*,
    No. 91 Civ. 7030 (JSM), 1992 WL 88174 (S.D.N.Y. Apr. 14, 1992) .............................................13

*EEOC v. Bloomberg L.P.*,
    967 F. Supp. 2d 816 (S.D.N.Y. Sept. 9, 2013)..................................................................................8

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
    No. 15 Civ. 1398 (AE), 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015)...........................................10

*Ferraro v. Kellwood Co.*,
    440 F.3d 96 (2d Cir. 2006) ..............................................................................................................11

*Field Day, LLC v. Cnty. of Suffolk*,
    463 F.3d 167 (2d Cir. 2006) ..............................................................................................................3

*Fincher v. Depository Trust & Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010) ............................................................................................................12

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ................................................................................................................3

*Forts v. City of N.Y. Dep't of Corr.*,
    No. 00 Civ. 1716 (LTS)(FM), 2003 WL 21279439 (S.D.N.Y. June 4, 2003)...................................6

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
    136 F.3d 276 (2d Cir. 1998) ......................................................................................................13, 14

*Gebhardt v. Allspect, Inc.*,
    96 F. Supp. 2d 331 (S.D.N.Y. 2000) ..................................................................................................3

*Green v. Brennan*,
    578 U.S. 546 (2016) ........................................................................................................................11

*Hayden v. Cnty. Of Nassau*,
    180 F. 3d 42 (2d Cir. 1999) ...........................................................................................................3, 4

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) ............................................................................................................15

*Johnson v. MediSys Health Network*,
    No. 10 Civ. 1596 (ERK)(WP), 2011 WL 5222917 (E.D.N.Y. June 1, 2011)...................................14

*Kaytor v. Elec. Boat Corp.*,
    609 F.3d 537 (2d Cir. 2010)...............................................................................................................9

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
    716 F.3d 10 (2d Cir. 2013)...............................................................................................................14

*Littlejohn v. City of N.Y.*,
    795 F.3d 297 (2d Cir. 2015) ..................................................................................8

*Love v. Premier Util. Servs., LLC*,
    186 F. Supp. 3d 248 (E.D.N.Y. 2016) .................................................................8

*Lucas v. S. Nassau Cmtys. Hosp.*,
    54 F. Supp. 2d 141 (E.D.N.Y. 1998) .................................................................10

*Lynch v. City of N.Y.*,
    952 F.3d 67 (2d Cir. 2020) ..................................................................................4

*Macias v. Barrier Free Living, Inc.*,
    No. 16 Civ. 1735, 2018 WL 1603566 (S.D.N.Y. Mar. 28, 2018) ...................10

*Marshall v. N.Y.C. Bd. of Elections*,
    322 F. App'x 17 (2d Cir. 2009) ...........................................................................9

*Mohamed v. NYU*,
    No. 14 Civ. 8373, 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015) ...................11

*Murray v. Visiting Nurse Servs.*,
    528 F. Supp. 2d 257 (S.D.N.Y. 2007) .................................................................9

*Nachmany v. FXCM, Inc.*,
    No. 91 Civ. 1235 (MJL), 2020 WL 178413 (S.D.N.Y. Jan. 9, 2020) ................6

*O'Dell v. v. Trans. World Ent. Corp.*,
    153 F. Supp. 2d 378 (S.D.N.Y. 2001) ...............................................................10

*Olaechea v. City of N.Y.*,
    No. 17-CV-4797 (RA), 2019 WL 4805846 (S.D.N.Y. Sept. 30, 2019) .............6

*Parron v. Herbert*,
    No. 17 CIV. 3848 (GBD), 2018 WL 2538221 (S.D.N.Y. May 18, 2018) ........12

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ................................................................................3

*Prince v. Cablevision Sys. Corp.*,
    No. 04-CV-8151 (RWS), 2005 WL 1060373 (S.D.N.Y. May 6, 2005) ...........10

*Quinn v. Green Tree Credit Corp.*,
    159 F.3d 759 (2d Cir. 1998) (abrogated on other grounds) ...............................9

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000) .................................................................15

iv

*Raspardo v. Carlone*,
   770 F.3d 97 (2d Cir. 2014) ................................................................................8

*Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..........................................................4, 15

*Rivera v. N.Y.C. Dep't of Corr.*,
   951 F. Supp. 2d 391 (E.D.N.Y. 2013) ...............................................................5

*Robinson v. v. Dibble*,
   613 F. App'x 9 (2d Cir. 2015) ............................................................................9

*Salahuddin v. Jones*,
   992 F.2d 447 (2d Cir. 1993) .............................................................................15

*Schiano v. Quality Payroll Sys., Inc.*,
   445 F.3d 597 (2d Cir. 2006) ...............................................................................5

*Smith v. Local 819 I.B.T. Pension Plan*,
   291 F.3d 236 (2d Cir. 2002) ...............................................................................3

*Spires v. Metlife Grp., Inc.*,
   No. 18-cv-4464 (RA), 2019 WL 4464393 (S.D.N.Y. Sept. 18, 2019) .............12

*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003) ...............................................................................9

*Thomas v. Five Star Elec.*,
   No. 18-CV-3691 (AT) (RWL), 2022 WL 2531323 (S.D.N.Y. May 5, 2022) ....15

*Trachtenberg v. Dep't of Educ.*,
   937 F. Supp. 2d 460 (S.D.N.Y. 2013) ..............................................................13

*Trans World Airlines, Inc. v. Hughes*,
   449 F.2d 51 (2d Cir. 1971) ...............................................................................16

*Vito v. Bausch & Lomb Inc.*,
   403 F. App'x 593 (2d Cir. 2010) .........................................................................9

*Wagner v. Burnham*,
   No. 1:03-CV-1522, 2006 WL 266551 (N.D.N.Y. Feb. 1, 2006) ......................14

*Whidbee v. Garzarelli Food Specialties, Inc.*,
   223 F.3d 62 (2d Cir. 2000) ...............................................................................11

STATUTES

Age Discrimination in Employment Act of 1967,
    Pub. L. No. 90-202 (codified at 29 U.S.C. § 621)........................................................12, 13

Americans With Disabilities Act of 1990,
    Pub. L. No. 101-336, 104 Stat. 328 (1990) .....................................................................12

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 1981, *et seq.* ........................................ passim

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act,
    Pub. L. No. 117-90, 136 Stat. 26 (codified at 9 U.S.C. §§ 401, 402) .....................................1, 11, 16

Fed. R. Civ. P. 10 ...........................................................................................................4

Fed. R. Civ. P. 12 ..................................................................................................2, 3, 4, 10

## PRELIMINARY STATEMENT

Plaintiff Gatsby Frimpong's (a/k/a "Derek Daniel Gatsby Frimpong", and apparently variations thereof) Complaint presents nothing more than a web of fabricated allegations that he knows to be false.  And those false allegations have been leveled only for the purposes of trying to avoid arbitration and coerce a multi-million dollar settlement. The Court should dismiss Frimpong's purported sexual harassment and retaliation claims[1] against Everyrealm Inc., Janine Yorio, and Jesse Yorio (collectively "the Everyrealm Defendants") and compel the remaining claims to arbitration, because Frimpong's "factual" assertions are facially implausible and legally insufficient to support a sexual harassment, constructive discharge or sexual harassment-based retaliation claim.[2]

Plaintiff's purported sexual harassment claim rests on the thinnest of possible assertions (see doc. 1 at ¶ 17); and, when, allegedly, plaintiff merely commented that he was "in a committed relationship" – he purportedly suffered retaliation prompting his resignation. (See doc. 1 at ¶¶ 53–89). Yet, accepting all of Frimpong's lies as true, his purported "sex harassment" claim is not remotely plausible under federal law. Indeed, for the entirety of his short four-month tenure with the Company, Frimpong worked remotely from London, England, and he never met a single Everyrealm employee, including Mrs. Yorio, in-person. (See doc. 1 at ¶ 54). There were no water cooler talks, closed door conversations, requests to go on dates or to engage in sexual encounters, and – obviously – no physical touching. Indeed, Frimpong and Mrs. Yorio spoke only seven times during his employment. And Frimpong does not tie any of his assertions to his gender or sex. Thus, at most, Frimpong's allegations

---

[1] Counsel for Frimpong applies labels like "quid pro quo", "retaliatory", and "harassment" on various allegations to bolster his fraudulent invocation of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("the EFA"). However, Frimpong fails to allege sufficient facts to plausibly assert a cause of action under any of the bogus legal theories that have been advanced.

[2] The Everyrealm Defendants submit this Motion in accordance with the Court's January 24, 2023 Order. (See doc. 23). However, based on the inapplicability of the EFA – as set forth in the Everyrealm Defendants' Motion to Compel Arbitration, the Court need not consider this Motion.

of purported "sexual harassment" do not remotely approach the required "severe or pervasive" standard and indeed amount, at most, to petty slights, trivial inconveniences, and isolated incidents. Consequently, given that Frimpong fails to plausibly assert a claim for sexual harassment, his "constructive discharge" claim fails.  Frimpong's retaliation claims are similarly unavailing.

In addition, any alleged retaliation claim (supposedly related to the frivolous sexual harassment claim) fails because Frimpong has not asserted that he engaged in any protected activity.  There is no allegation whatsoever that Frimpong ever complained about harassment, discrimination or any other inappropriate misconduct during his brief tenure with Everyrealm.  Indeed, during his offboarding with Katherine ("Kathy") Yost – who is also represented by Seppinni in an action against Everyrealm – Frimpong stated he was resigning for strictly personal reasons that extended "years" into the past (i.e. that pre-dated his tenure with the Company). (See Declaration of Jesse Yorio ("Mr. Yorio Decl.") at Exh. A).  Adding insult to injury, on his second-to-last day with the Company Frimpong wrote an unsolicited message to Everyrealm board member Julia Schwartz thanking her for building "such a great company." (See doc. 12-1).  Even accepting, for Rule 12 purposes, that Frimpong made the meaningless remark he pleaded – that he told Mrs. Yorio he was "in a committed relationship" – this assertion cannot plausibly be construed as protected activity under Title VII.

Finally, although Frimpong's allegations taken in their entirety do not amount to sexual harassment, the Court should discount – if not ignore entirely – the new and contradictory assertions in Frimpong's Complaint. These allegations, including that he was retaliated against for "rebuff[ing]" Mrs. Yorio's purported "sexual advances," are noticeably absent in his sworn Charge of Discrimination. And all of the available documentary evidence (some of which Everyrealm provided to Frimpong's counsel on January 2, 2023 and which he, in turn, filed with this Court) contradicts his bogus claims. Thus his claims are unwarranted by any applicable law, and are being presented only to

avoid his contractual duty to arbitrate and drum up negative publicity against the Everyrealm

Defendants – i.e. to harass, needlessly increase the cost of litigation, and pressure an unwarranted

settlement.  Indeed, Frimpong refused to participate in a third-party investigation into his post-

resignation allegations of discrimination, and his counsel sought to stoke interest in his case (and

coerce Everyrealm) by seeking to publicize plaintiff's bogus claims with the New York Post. The Court

need not accept these contradictory allegations as true, and dismissal of the remaining sexual

harassment allegations is clearly warranted under applicable law.

In light of the foregoing, the Court should dismiss Frimpong's sexual harassment and any

purported sexual harassment-based retaliation claims, and compel the remainder of this Action to

arbitration.

## **LEGAL STANDARD**

On a Rule 12(b)(6) motion to dismiss, the Court must assume the truth of Frimpong's factual

allegations, but not his legal conclusions or any "unwarranted deductions of fact." *First Nationwide*

*Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994).

To state a valid claim, a plaintiff cannot rely on mere conclusory assertions, but instead must

allege "concrete" facts that make his claims "plausible."  *See Pension Benefit Guar. Corp. v. Morgan*

*Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013). Indeed, conclusory allegations are not

entitled to be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 554-555 (2007)); *see also Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d

236, 240 (2d Cir. 2002) ("legal conclusions masquerading as factual conclusions will not suffice")

(quoting *Gebhardt v. Allspect, Inc.,* 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the

complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v.*

*Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of N.Y.*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). Moreover, allegations in a Complaint that are contradicted by other documents available to the Court need not be accepted as true when assessing a Motion to Dismiss under Rule 12. *Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) ("Thus, a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.").

## ARGUMENT

The Court should dismiss Frimpong's sexual harassment, constructive discharge, and sexual harassment-based retaliation claims. Frimpong has made no assertion that the purported harassment was based on his gender or sex, he has asserted nothing more than isolated incidents, petty slights, and trivial inconveniences, and he failed to allege his working conditions were "intolerable," or that he engaged in "protected activity" as defined by applicable law.

## I.    Frimpong Fails to State a Claim for Sexual Harassment.

In his Complaint, Frimpong fails to allege conduct by the Everyrealm Defendants that would constitute sexual harassment. Indeed, according to other lawsuits filed by Frimpong's counsel against Everyrealm, similar purported inquiries and comments were directed to both male and female employees, thus demonstrating that such alleged comments have no connection to Frimpong's gender or sex. While Frimpong claims he was subjected to unwanted inquiries regarding his relationship status from time-to-time, he does not allege that any of the Everyrealm Defendants inquired whether he would be interested in an amorous relationship.  Thus Frimpong alleges nothing more than petty

slights, minor annoyances, and isolated incidents – if that – and therefore does not meet the severe or pervasive standard necessary to state a claim for a hostile work environment.[3]

Frimpong specifically asserts he was subjected to sexual harassment based on nothing more than the following: Mrs. Yorio (i) told Frimpong during a remote meeting that "it is 'important [that he] get the customer wet, just like [he] would with a woman." (See doc. 1 at ¶ 56) (alterations in original); (ii) rejected "a new orange and red product colorway . . . because . . . the colorway reminded her of a past German man she had 'hooked up with'"[4]; (iii) asked "many" times if Frimpong was "in a relationship." (Id. at ¶ 63); (iv) stated that she and her husband "are only married in the Metaverse." (Id. at ¶ 68); and (v) "made it clear that [Frimpong] would not be considered for [a promotion]" once he told her he "was in a committed relationship." (Id. at ¶¶ 70–73); and that Mrs. Yorio and Mr. Yorio "engaged retaliatory and unfounded investigation into Mr. Frimpong and his employment history" once Frimpong told Mrs. Yorio he "was in a committed relationship."[5] (Id. at ¶¶ 78–79).

These comments have no relationship to Frimpong's gender or sex, nor do they plausibly state a claim for sexual harassment.

---

[3] Frimpong asserts that he was subjected to "*quid pro quo*" sexual harassment, but he failed to plead any facts that would give rise to such a claim because there are no factual assertions of any "sexual advances." *See Rivera v. N.Y.C. Dep't of Corr.*, 951 F. Supp. 391, 400 (E.D.N.Y. 2013) (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2006)  ("To make out a *prima facie* case of *quid pro quo* sexual harassment, an employee must show a tangible employment action, i.e., that an explicit alteration in the terms or conditions of employment resulted from refusal to submit to a supervisor's sexual advances.")

[4] Even if Mrs. Yorio made this remark, such an assertion does not constitute sexual harassment under any applicable law.

[5] Even if Frimpong could establish the background check was motivated by discriminatory or retaliatory animus, although he cannot, a background check does not amount to an adverse employment action. *Catanzaro v. City of N.Y.*, Nos. 10 Civ. 1825 (JSR), 10 Civ. 1827 (JSR), 2011 WL 335648, at *6 (S.D.N.Y. Jan. 25, 2011) ("[A] background check is no more than an inconvenience.") (citing *Das v. Consol. Sch. Dist. Of New Britain*, 369 F. App'x 186, 189 (2d Cir. 2010)).

5

a.    **Frimpong Does Not Assert Any Harassment Was "Because of" a Discriminatory Motive.**

Frimpong's claims fail at the outset, because he does not make any attempt to link the alleged comments to his gender. To support a sexual harassment claim, a plaintiff must advance factual assertions that would demonstrate that the alleged harassment occurred because of a discriminatory motive.

Nowhere does Frimpong allege any facts to indicate that Mrs. Yorio's comments were made *because of* Frimpong's gender.  *See Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) (affirming judgment on the pleadings and holding facially-neutral comments only relevant where there is "some circumstantial or other basis for inferring that incidents []-neutral on their face were in fact discriminatory"). In other words, Frimpong's allegations cannot plausibly be construed as sex or gender based harassment – "[a]n environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes." *Forts v. City of N.Y. Dep't of Corr.*, No. 00 Civ. 1716 (LTS)(FM), 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003)  (citations omitted); s*ee also Nachmany v. FXCM, Inc.*, No. 91 Civ. 1235 (MJL), 2020 WL 178413, at *6 (S.D.N.Y. Jan. 9, 2020) (finding allegations were not "because of" protected characteristic and granting motion to dismiss on Title VII claims, *inter alia*, where (1) defendant called plaintiff "a dick"; (2) "changed Plaintiff's computer background to an image of a 'naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy'"; and (3) "drew onto a photograph of Plaintiff a 'depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation onto Plaintiff's head'"); *Olaechea v. City of N.Y.*, No. 17-CV-4797 (RA), 2019 WL 4805846, at *6 (S.D.N.Y. Sept. 30, 2019) (dismissing Title VII, *inter alia*, claims because "[r]umors of two colleagues having a sexual relationship with one another are not innately gender based—they may be equally upsetting to either colleague regardless of their gender"); *DelleFave v.*

*Access Temps., Inc.*, No. 99 CIV. 6098 RWS, 2001 WL 25745, at *7 (S.D.N.Y. Jan. 10, 2001)

(dismissing Title VII, *inter alia*, claims because "[n]othing about the alleged statement relate[d] to

DelleFave's gender. Even if embarrassing or even humiliating, a statement that an employee is having a

consensual relationship with a co-worker cannot be construed as discrimination or harassment on the

basis of sex absent some additional assertion, such as that the plaintiff was singled out for such

comments because of his or her gender.").

Here, Frimpong has not advanced a single factual allegation that would connect the alleged

comments by Mrs. Yorio to Frimpong's gender or sex. Indeed, as described by Frimpong's counsel's

other clients, Mrs. Yorio made inquiries/comments regarding certain employees' relationship status to

both men and women – so there can be no inference that Mrs. Yorio only made these alleged comments

to Frimpong because of his gender. (See docs.  35 at ¶¶ 73, 76–78 and 41 at pp. 14–15 in *Yost v.

Everyrealm et al.*, Case No. 1:22-cv-06549 (PAE)(SLC)). Moreover, Frimpong has made no claim that

Mrs. Yorio only made the alleged comments to him because he is a man. And little, if anything, about

the alleged comments themselves indicates any connection to Frimpong's gender. Indeed, the alleged

comments at issue here are very much like (though insignificant in comparison to) those in the

*Olaechea* and *Dellefave* cases discussed above – nothing more than remarks about Mrs. Yorio's own

relationships, and inquiries regarding Frimpong's relationship status.  And, as such, they cannot give

rise to a claim of sexual harassment.

**b.      Frimpong Does Not Allege Severe or Pervasive Sexual Harassment.**

Even if the purported remarks had been alleged to relate somehow to Frimpong's own gender,

the allegations against the Everyrealm Defendants individually and collectively do not meet the

standards for asserting a sexual harassment claim under Title VII.

Frimpong alleges a handful of instances where he was made allegedly uncomfortable by

discussions of Mrs. Yorio's relationship status and a former partner, and several inquiries regarding his relationship status. Frimpong does not allege he was ever physically touched, let alone touched in a sexually inappropriate manner. Nor does he allege Mrs. Yorio ever propositioned him for sexual or otherwise inappropriate encounters. And, it is impossible for him to make such assertions, because he never met Mrs. Yorio in-person. The Court should accordingly dismiss Frimpong's sexual harassment claim.

"To establish a hostile work environment . . . , a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Indeed, it is well-settled that Title VII is not a "general civility code" and that "petty slights, minor annoyances, and simple lack of good manners" are not actionable. *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 847 (S.D.N.Y. Sept. 9, 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

The hostile work environment test has both objective and subjective elements. "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris*, 510 U.S. at 21-22). "In determining whether a plaintiff suffered a hostile work environment," the Court "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016) (citing *Littlejohn*, 795 F.3d at 321). "As a general rule, incidents must be

more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano*, 294 F.3d at 374). Frimpong alleges nothing more than, at worst, petty slights, trivial inconveniences, and isolated instances of personal commentary.

Frimpong does not even remotely allege conduct that would be, "so severe or pervasive as to alter the conditions of h[is] employment and create an abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (internal quotations and alterations omitted); *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 547 (2d Cir. 2010). Courts within the Second Circuit routinely find that far more substantial allegations of "harassment" fail to satisfy this standard. *See Vito v. Bausch & Lomb Inc.*, 403 F. App'x 593 (2d Cir. 2010) (rejecting Title VII hostile work environment claim because the alleged actions were just sporadic use of abusive language, gender-related jokes, occasional teasing, or workplace bullying); *Marshall v. N.Y.C. Bd. of Elections*, 322 F. App't 17, 18 (2d Cir. 2009) (summary order) (finding no hostile work environment where homosexual supervisor showed plaintiff a "sexual device he had purchased for his partner," even though plaintiff "may have been legitimately offended" by such talk); *Robinson v. v. Dibble*, 613 F. App'x 9, 13 (2d Cir. 2015) (affirming dismissal where "evidence of crude and offensive comments directed at [plaintiff's] gender or mental health issues that were delivered sporadically by coworkers . . . while condemnable, did not rise to the level of creating an abusive and hostile workplace environment"); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (affirming dismissal of sexual harassment claim where a supervisor told the plaintiff that "she had been voted the 'sleekest ass'" in the office and touched the plaintiff's breasts with papers in his hand) (abrogated on other grounds); *Murray v. Visiting Nurse Servs.*, 528 F. Supp. 2d 257, 278–80 (S.D.N.Y. 2007) (male-to-male statements in the workplace such as "you're such a bitch," "good morning ladies," "when are you going to come out of the closet," and "are you ladies going to the

parade?" insufficient to establish hostile work environment claim); *O'Dell v. v. Trans. World Ent. Corp.*, 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001) (dismissing sexual harassment claim where a supervisor made comments about the plaintiff's appearance, "sent her e-mails professing his love for her, called her at work and at home, invited her to tour New York City with him, gave her three gifts, and played her a song that she found offensive"); *Macias v. Barrier Free Living, Inc.*, No. 16 Civ. 1735, 2018 WL 1603566, at *8 (S.D.N.Y. Mar. 28, 2018) (gossip about plaintiff's purported sexual relationships was not sufficiently severe or pervasive to alter conditions of employment); *Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 1398 (AE), 2015 WL 7736554, at **5–7 (S.D.N.Y. Nov. 30, 2015) (see above); *Prince v. Cablevision Sys. Corp.*, No. 04-CV-8151 (RWS), 2005 WL 1060373, at *2, 6-7 (S.D.N.Y. May 6, 2005) (dismissing a hostile work environment claim on a Rule 12(c) motion where an employee was subjected to "sex talk," and where a co-worker attempted to kiss the plaintiff and asked her to have sex with him); *Dayes v. Pace Univ.*, No. 98 Civ. 3675 (WHP), 2000 WL 307382, at *4–5 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 F. App'x 204 (2d Cir. 2001) (granting summary judgment to defendant where plaintiff was subject to six sexual comments, multiple requests for dates, was screamed at by supervisor, and was touched on the back); *Lucas v. S. Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 147–49 (E.D.N.Y. 1998) (denying hostile work environment claim where supervisor touched plaintiff multiple times, asked about the color of plaintiff's underwear, said plaintiff wanted to "go to bed" with her, and said "fuck you" to plaintiff on two occasions). Even accepting Frimpong's allegations as true for purposes of this Motion, he is nowhere close to plausibly alleging such a claim. He worked remotely, and never even met Mrs. Yorio in-person (See doc. 1 at ¶ 54), and has asserted nothing more than a single, allegedly inappropriate sexual innuendo that was not about him, one remark about Mrs. Yorio's former partner, and that Mrs. Yorio asked him if he was in a relationship. (See doc. 1 ¶¶ at 56–70).  Frimpong's claims fall well-short of establishing "severe and pervasive" sexual

harassment.

Frimpong advances no allegation that these gender-neutral remarks were made because of his gender. And even accepting Frimpong's mere isolated incidents, petty slights and minor annoyances as true, these claims fail as a matter of law.[6]

## II.    **Frimpong Fails to State a Claim for Constructive Discharge.**

To the extent the Court deems Frimpong's purported constructive discharge claim as being related to his sex harassment claim, it should dismiss the constructive discharge claim as well.

A "[c]onstructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).   To establish claim a constructive discharge claim, the plaintiff must prove that his employer "'deliberately and discriminatorily created work conditions "so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Mohamed v. NYU*, No. 14 Civ. 8373, 2015 WL 5307391, at *4 (S.D.N.Y. Sept. 10, 2015) (quoting *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006)); *see also Green v. Brennan*, 578 U.S. 546, 555 (2016) ("A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to

---

[6] Once the Court dismisses Frimpong's claim for purported sexual harassment, the case must be compelled to arbitration. The EFA provides in relevant part: "at the election of the person alleging conduct constituting a sexual harassment dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . **the** sexual harassment dispute." Pub. L. No.117-90, 136 Stat. 26. (emphasis added). The legislation defines "sexual harassment dispute" as a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* **The** "conduct that is alleged to constitute sexual harassment" here is that Mrs. Yorio asked Frimpong if he was in a relationship, made a single, stray sexual remark, and once remarked about a former romantic partner. Once these assertions are dismissed, there is no longer a "sexual harassment dispute" for this case to relate.

resign."). As with his purported sexual harassment claim, Frimpong comes nowhere near pleading facts that would meet this very exacting standard.

Indeed, a plaintiff's inability to plead a hostile work environment claim consequently renders a related constructive discharge claim moot. *See Parron v. Herbert*, No. 17 CIV. 3848 (GBD), 2018 WL 2538221, at *12 n. 11 (S.D.N.Y. May 18, 2018) (quoting *Croom v. W. Conn. State Univ.*, 77 F. App'x 60, 61 (2d Cir. 2003) (summary order) ("Plaintiff's inability to establish a hostile work environment also prevents him from establishing a constructive discharge claim.")). "Because '[the constructive discharge] standard is higher than the standard for establishing a hostile work environment,' where, as here, the plaintiff 'fail[s] to establish a hostile work environment, [his] claim of constructive discharge also fails.'" *Id.* (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010)).  Indeed, the burden to plausibly assert a constructive discharge claim has been described as a "demanding standard, because 'constructive discharge cases present a wors[t] case harassment scenario, harassment ratcheted up to the breaking point.'" *Spires v. Metlife Grp., Inc.*, No. 18-cv-4464 (RA), 2019 WL 4464393, at *9 (S.D.N.Y. Sept. 18, 2019) (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011)). In light of Frimpong's inability to establish severe and pervasive harassment, and for this reason alone, Frimpong's constructive discharge claim fails as a matter of law.

Even if the Court were to consider the substance of Frimpong's assertions, given the standards for pleading and proving such a constructive discharge claim, the Court can only conclude that Frimpong has failed to meet them. *See Davis v. Goodwill Indus. of Greater N.Y. & N.J., Inc.*, No. 15 Civ. 7710 (ER), 2017 WL 1194686, at **1-4, 12 (S.D.N.Y. Mar. 30, 2017) (dismissing claim for constructive discharge under the ADEA, ADA, and Title VII where an employer falsely accused an employee of missing her shift; spoke to her about arriving late, despite not speaking to other late

employees; treated employees of another race more favorably; and addressed the employee in an overly formal manner to highlight her more advanced age); *Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 468, 472 (S.D.N.Y. 2013) (finding plaintiff failed to plead constructive discharge under the ADEA where she alleged that her supervisor subjected her to "excessive scrutiny"; stared at her in an effort to intimidate her; gave her negative evaluations; moved her to a poorly ventilated, windowless office; and denied her training opportunities). Here, unlike the cases referred to above, Frimpong does not allege Everyrealm subjected him to any disciplinary actions, let alone that they intimidated him or subjected him to physically unsafe working conditions.

The Court should dismiss Frimpong's constructive discharge claim.

## III.   Frimpong Does Not Allege He Engaged in Protected Activity.

The Court should dismiss Frimpong's retaliatory investigation and failure to promote claims, because plaintiff does not allege he opposed any employment practice that would be unlawful under Title VII.  Even accepting Frimpong's lies as true for purposes of this motion, he only asserts that, "he told [Mrs. Yorio] that he was in a committed relationship"[7] – not that he opposed a practice made unlawful by Title VII.

Title VII of the Civil Rights Act of 1964 defines protected activities as: (1) an employee's opposition to any activity which is prohibited by Title VII, or (2) an employee's participation in any Title VII investigation or proceeding. 42 U.S.C. § 2000e. Additionally, to constitute "protected activity," the employee's words must allow the employer to "reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l*

---

[7] That counsel for Frimpong characterizes this assertion as plaintiff "rebuff[ing]" Mrs. Yorio's "sexual advances" is immaterial. *See Edel Gems, Inc. v. Cont'l Jewelers, Inc.*, No. 91 Civ. 7030 (JSM), 1992 WL 88174, at *2 (S.D.N.Y. Apr. 14, 1992) ("Although we must accept the facts alleged by plaintiff in the affidavits or pleadings as true we do not have to accept a lawyer's characterization of these facts.")

*Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Indeed, even the use of terms such as "discrimination," "harassment," and "retaliation" are insufficient to place an employer on notice of a protected complaint "if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013). Frimpong does not plausibly allege that he satisfied either statutory prong. Instead – relying solely on the facially inconsequential "in a committed relationship" allegation – Frimpong seeks to rely on inapposite cases that that have considered the refusal of "sexual advances" as potentially constituting protected activity under Title VII. *See, e.g., Johnson v. MediSys Health Network*, No. 10 Civ. 1596 (ERK)(WP), 2011 WL 5222917, at *16 (E.D.N.Y. June 1, 2011) ("There is no reason to disagree with the view of the majority of courts that allegations that an employee consistently refused her supervisor's sexual advances constitutes 'protected activity' for purposes of a retaliation claim.").[8] Specifically, in *Johnson*, the court found the plaintiff engaged in protected activity where:

> The plaintiff has alleged that Rosen, who was her supervisor, consistently sent her inappropriate emails, requested that she meet with htm [sic] socially, and touched her inappropriately in an attempt to engage her in a romantic relationship. She alleges that 'Plaintiff did not respond to [Rosen's] inappropriate emails, or sometimes just acknowledge receipt' and 'Plaintiff consistently refused to respond or engage in a romantic relationship with Rosen, which angered Rosen and was one of the reasons he ultimately sought to terminate Plaintiff [sic] employment.'

*Johnson*, 2011 WL 5222917, at *49 (alterations in original). By contrast, Frimpong does not assert Mrs. Yorio made any sexual advances towards him whatsoever, much less that she touched him, or sent him inappropriate emails. Nor does Frimpong assert that that he "consistently refused" any such non-existent conduct by Mrs. Yorio. A mere single utterance by Frimpong that he was in a "committed

---

[8] There are a substantial number of courts that have found the refusal of "sexual advances" is not a protected activity under Title VII. *See Wagner v. Burnham*, No. 1:03-CV-1522, 2006 WL 266551 (N.D.N.Y. Feb. 1, 2006) (collecting cases).

relationship" falls far short of the allegations in *Johnson* and other similar cases.

Frimpong does not allege he engaged in protected activity, and the Court should accordingly dismiss Frimpong's retaliation claim.

## IV.  **The Court Should Reject Frimpong's Contradictory and False Allegations.**

While Frimpong's allegations in their totality as alleged in the Complaint do not amount to a plausible claim of harassment as a matter of law, his latest allegations should be disregarded by the Court. Courts within the Second Circuit routinely reject contradictory and incoherent allegations in a complaint when analyzing a motion to dismiss. *See Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Lit.)*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) ("Thus, a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.") (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim "are contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice")). *See also Thomas v. Five Star Elec.*, No. 18-CV-3691 (AT) (RWL), 2022 WL 2531323, at *7 (S.D.N.Y. May 5, 2022) ("[If] a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (dismissing claim that is based on "wholly conclusory and inconsistent allegations"); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (granting motion to dismiss where the documents on which plaintiffs' securities fraud claim purport to rely contradict allegations in plaintiffs' complaint); *Am. Centennial Ins. Co. v. Seguros La Republica, S.A.*, No. 91 Civ. 1235, 1996 WL 304436 at *16 (S.D.N.Y. June 5, 1996)

15

("Allegations are not well pleaded if they are 'made indefinite or erroneous by other allegations in the same complaint [, or] . . . are contrary to facts of which the Court will take judicial notice.'") (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971)). A surplus of documentary evidence exists in the judicial record from which the Court can take judicial notice of Frimpong's contradictory assertions. Indeed, it is plain that Frimpong's purported sexual harassment allegations only appeared – and have continued to expand – in an attempt to avoid arbitration.

On August 15, 2022, Frimpong submitted a sworn Charge of Discrimination to the Equal Employment Opportunity Commission. (See doc. 8-1).  In his Charge, Frimpong "sw[ore] or affirm[ed] that [he] [] read the above charge and that it is true to the best of [his] knowledge, information and belief." At that time, Frimpong asserted that Everyrealm "investigated him due to his real or perceived national origin and/or race", "failed to promote him due to his race – and instead hired a white male Head of Product Management", and "initiated racially-motivated investigations into Complainant's employment history and spread lies about [his] employment history on account of his race. This investigation was racially motivated." (Id.). Indeed, he also swore the "Latest" "DATE(S) DISCRIMINATION TOOK PLACE" was March 1, 2022. (Id.). In his Complaint, in an attempt to fraudulently invoke the EFA and avoid his contractual obligation to arbitrate, Frimpong alleged that the failure to promote and investigation were, instead, motivated by sexual harassment-based retaliation and that the latest date of discrimination was March 4, 2022. (See doc. 1 at FN 2 & ¶¶ 71–73, 79). The Court should disregard these contradictory assertions.

Moreover, uncontroverted documentary evidence in Frimpong's counsel's possession, some of which he previously filed with this Court, contradicts Frimpong's absurd sexual harassment claim. Specifically, on March 3, 2022, his second-to-last day with the Company, Frimpong wrote an unsolicited message to Everyrealm board member Julia Schwartz stating: "Hey, just wanted to reach

16

out. I decided I'm going to resign this week…so just want to thank you before I go for building such a great company." (See doc. 12-1).

Separately, in stark contrast to his assertion that he is a "private" person, there is no question that Frimpong invited discussions regarding his personal life. Indeed, he sent a message to Mrs. Yorio stating: "Watching you is interesting…it's like getting a preview of my future[.] Going to have to get your thoughts on balancing children[.] I don't have any right now, but always wondered how I'd do it all[.]" (See Declaration of Janine Yorio ("Mrs. Yorio Decl.") at Exh. A.) Mrs. Yorio responded, "are you married? My children are kinda neglected. For example, tonight is Halloween. I'm not with them. :(" (Id.). Frimpong replied: "Nope, not married, right now[.] But been exploring[.]" (Id.). Mrs. Yorio concluded by stating: "good take your time." (Id.).[9]

Frimpong's bogus assertions against Mrs. Yorio are also flatly contradicted by the complimentary, (and often) unsolicited messages he transmitted to her. For example, on February 4, 2022 – approximately one month prior to his voluntary resignation for "personal" reasons – Frimpong wrote to Mrs. Yorio that, "I do want to congratulate you on getting the wire and bringing the money in. I know a lot of us don't see the hard work in the background, but I do know you're doing it and you lead by example . . . you work hard, so you expect everyone else to do so and that's the way it should be. Thank you for everything." (Mrs. Yorio Decl. at Exh. A). When Mrs. Yorio thanked Frimpong for his compliment, he replied – "And I appreciate the opportunity you've given me[.]" (Id.) Mrs. Yorio stated she would like to meet Frimpong in-person, and he responded "same here …. I'd like to get in front of you, for sure. We will make something happen." (Id.) In that same conversation, Frimpong stated to Mrs. Yorio: "And I'd like to talk to you this weekend or Monday about why I'm in London…I think then you'll have a better understanding of my travel and remote work situation." The

_____

[9] There are no other recorded communications between Mrs. Yorio or Frimpong where his relationship status is discussed.

conversation then proceeded as follows:

| | |
|---|---|
| Mrs. Yorio: | Ok call me tomorrow any time. |
| Frimpong: | Ok, no problem…I'll send you a ping. I'm flexible tomorrow too. |
| Mrs. Yorio: | And it's a privilege and a pleasure to work with you. |
| | And I mean it. |
| Frimpong: | likewise! |

(Id.).[10]

The Court should ignore the contradictory, purported sexual harassment allegations in Frimpong's Complaint. Indeed, authority within the Second Circuit permits this Court to do so. These contradictory claims are refuted by Frimpong's sworn Charge of Discrimination, and all available documentary evidence.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's claims for purported sexual harassment, constructive discharge, and sexual harassment-based retaliation. Consequently, the Court should compel this Action to arbitration.

Dated: New York, New York
       February 8, 2023

PROSKAUER ROSE LLP

By:     */s/ Lloyd B. Chinn*

Lloyd B. Chinn, Esq.
Eleven Times Square
New York, New York 10036-8299
Ph. (212) 969-3000
Fax (212) 969-2900
lchinn@proskauer.com

---

[10] Frimpong and Mrs. Yorio accordingly calendared a meeting for the following day. (Id.).

18

*Attorney for Everyrealm Inc.*
*(f/k/a Republic Realm Inc.),*
*Janine Yorio and Jesse Yorio*